## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 12 2019, 9:24 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. MacKenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Brandon G. McAllister,

*Appellant-Respondent*,

v.

State of Indiana,

*Appellee-Petitioner*.

November 12, 2019

Court of Appeals Case No.
19A-CR-1425

Appeal from the Vigo Superior Court

The Honorable John T. Roach, Judge

Trial Court Cause No.
84D01-1509-F5-2108

**Brown, Judge.**

[1] Brandon G. McAllister appeals the revocation of his probation. We affirm.

*Facts and Procedural History*

[2] On August 8, 2016, McAllister and the State entered into a plea agreement which McAllister agreed to plead guilty as charged under cause number 84D01-1509-F5-2108 ("Cause No. 2108") to resisting law enforcement as a level 5 felony, failure to remain at the scene of an accident with serious bodily injury as a level 6 felony, and reckless driving as a class A misdemeanor, and he agreed to admit to a probation violation under cause number 84D01-1207-FB-2252 ("Cause No. 2252"). The State agreed to dismiss three other counts, its allegation that McAllister was an habitual offender, and its action under another cause. The plea agreement provided there was no agreement as to sentencing except that McAllister would not be sentenced to a term of imprisonment greater than eight years.

[3] According to a presentence investigation report ("PSI") prepared in September 2016, McAllister "was diagnosed with paranoid schizophrenia in 2011, but is not being treated for it at this time." Appellant's Appendix Volume 2 at 58. It stated that he admitted to using marijuana and methamphetamine on a daily basis from the age of thirteen. Under mental health, it provided: "He reports that he was diagnosed as a juvenile with bipolar disorder. In 2011, he was diagnosed with paranoid schizophrenia. He is not currently under a physician's care and is not taking any medications." *Id*. at 64.

[4] On September 19, 2016, the court entered a sentencing order which stated there were no statutory mitigating factors but some weight was given to McAllister's expression of remorse, and that the aggravating factors included his history of criminal behavior, that the harm caused the victim is significant and greater than the elements necessary to prove the offense, and that he was on probation when he committed the offense. The court ordered that he serve two years of his previously-suspended sentence under Cause No. 2252 and sentenced him to six years for his level 5 felony, two and one-half years for his level 6 felony, and one year for his class A misdemeanor under Cause No. 2108, to be served concurrently, but consecutive to Cause No. 2252, for a combined term of eight years in the Department of Correction (the "DOC"). The court also ordered purposeful incarceration and stated that if he successfully completed CLIFF and some education and/or job training, it would consider a modification.

[5] On February 19, 2018, McAllister filed a petition to modify sentence stating that he had completed the CLIFF program, the course Power Over Addiction through Mothers Against Methamphetamine, and a series of eight courses by Home Bible Studies. On April 6, 2018, the court granted his motion, suspended sufficient time to modify his DOC release date to July 12, 2018, approved him for the Community Transition Program ("CTP") under the supervision of Vigo County Community Corrections Work Release, ordered him to engage in any available relapse prevention programming while on CTP, and ordered that the time from July 12, 2018, to August 25, 2020, was suspended to formal probation and that, in the discretion of his probation

officer, he could earn the right to convert to informal probation after successfully completing one year. The terms of his probation included that he would not violate any laws, that he agreed to submit to any drug screening test as requested, and that he acknowledged that a positive test would be deemed a violation of probation.

[6] On April 22, 2019, McAllister's probation officer filed a notice of probation violation alleging that McAllister had submitted to seven drug screens since being placed on probation, that six of those tested positive for methamphetamine, and that he was noncompliant with recommended drug treatment.

[7] On May 22, 2019, the court held a revocation hearing at which McAllister's probation officer testified that he submitted to seven drug screens and tested positive for methamphetamine on six of the screens. When asked if McAllister was supposed to undergo drug treatment, the officer stated "yeah, we'd come to an agreement for that," that he was supposed to report to Choices, that he did receive an evaluation, and that he did not start the recommended program. Transcript Volume 2 at 6. When asked if Choices made efforts to work with McAllister, the officer answered that he believed so. When asked if he had a conversation with McAllister about the failed drug screens, the officer stated that he had multiple conversations with him about them. When asked for his recommendation, the officer answered "I honestly don't have a recommendation. We've went through two (2) to three (3) different options with Mr. Mc[A]llister. [H]e's not done any of them . . . so I honestly don't

have an opinion . . . I know what he needs to do, [] but he hasn't done it so far." *Id*. at 8. The prosecutor argued that McAllister "has had basically the most intensive drug treatment we can offer through DOC," his sentence was modified, and he has failed nearly every drug screen that was given. *Id*. at 15. She stated she did not think that he had any intention of complying with the terms of probation and did not think there was "anything that we can offer him at this point here, having already been through [] RWI and Purposeful," and "there's nothing that we can offer locally, uh, even Choices, which he was offered as followed up care." *Id*. at 15-16. McAllister's counsel stated that, if the court found that a commitment to community corrections would be appropriate, McAllister could be placed on work release. The court asked "[s]tatus of any programming while on CTP," and McAllister's probation officer replied "[n]o. He hasn't done anything." *Id*. at 16. The court revoked McAllister's previously-suspended time and ordered that he serve the sentence in the DOC.

[8] On May 30, 2019, McAllister's counsel filed a Motion to Reconsider Ruling which stated that he had acquired new information and attached a letter from Virgil Macke. The letter stated "I have been seeing Mr. McAllister at Hamilton Center for a few months now," "I was hoping that the Dr. would place Mr. McAllister on Latuda . . . but she placed him on Abilify," "[t]his is after several months that it took to get him in to see the Dr.," "[a]nyway, Mr. McAllister's brain is wired a little differently than others. A stimulant slows his brain down and allows him to concentrate and sleep better. Thus, the failed drug screens

for meth," and "I think that if Mr. McAllister could be placed on the right medication (Latuda) his life would be much different." Appellant's Appendix Volume 2 at 172. That same day, the court denied the motion.

### *Discussion*

[9] McAllister claims the trial court erred in revoking his probation. He states that he did not dispute that he violated the terms of his probation by testing positive for methamphetamine and failing to follow through with drug treatment recommendations but argues that he has suffered from severe bipolar disorder since childhood, that he self-medicates by using methamphetamine when he is not properly medicated for the disorder, and that while on probation he was not properly medicated. He argues "[t]his does not justify [his] methamphetamine abuse but explains why he returned to using drugs even after completing the CLIFF program," that his therapist "implied that if properly medicated, [he] may not turn to methamphetamine to self-medicate," and he could have been placed in community corrections and allowed to continue drug treatment. Appellant's Brief at 10.

[10] The State responds that the trial court did not abuse its discretion when it revoked McAllister's probation, that he tested positive for methamphetamine on six occasions after completing CLIFF, that the probation department gave him multiple options to complete programs that would help with his drug use and addiction, and that he did not take advantage of them. It argues that McAllister's claim that his violation was based on an underlying mental health issue is unfounded, Macke is a licensed social worker and not a psychologist or

doctor, the court was not required to credit Macke's opinion, and none of the speculation in Macke's letter changes the facts before the court.

[11] Ind. Code § 35-38-2-3 provides in part:

> If the court finds that the person has violated a condition at any time before termination of the period, and the petition to revoke is filed within the probationary period, the court may impose one (1) or more of the following sanctions:
>
> > (1) Continue the person on probation, with or without modifying or enlarging the conditions.
> >
> > (2) Extend the person's probationary period for not more than one (1) year beyond the original probationary period.
> >
> > (3) Order execution of all or part of the sentence that was suspended at the time of initial sentencing.

[12] We review trial court probation violation determinations and sanctions for an abuse of discretion. *Heaton v. State*, 984 N.E.2d 614, 616 (Ind. 2013) (citing *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007)). The Indiana Supreme Court has explained that "[o]nce a trial court has exercised its grace by ordering probation rather than incarceration, the judge should have considerable leeway in deciding how to proceed" and that "[i]f this discretion were not afforded to trial courts and sentences were scrutinized too severely on appeal, trial judges might be less inclined to order probation to future defendants." *Prewitt*, 878 N.E.2d at 188.

[13] The record reveals that the court initially imposed a combined sentence of eight years to be served in the DOC, ordered purposeful incarceration, and stated

that, if McAllister successfully completed CLIFF and some education and/or job training, it would consider modification. McAllister later requested sentence modification stating that he had completed CLIFF and other programs, and the court granted his request, suspended a portion of his sentence to formal probation, and ordered him to participate in any available relapse prevention programming. McAllister does not dispute that he submitted to seven drug screens and six were positive for methamphetamine. His probation officer testified that he had multiple conversations with McAllister regarding his positive drug screens and that there was an attempt to work with him and present him with programming options, but he did not comply. The court emphasized the extent to which McAllister had received treatment and leniency and ordered that he serve his previously-suspended sentence. McAllister's bipolar disorder diagnosis was reflected in the PSI, and the court was able to consider the letter from Macke but declined to reconsider the revocation of his probation on that basis.

[14] Given the circumstances, we cannot say that the trial court abused its discretion in revoking McAllister's probation and ordering that he serve the remainder of his previously-suspended sentence.

[15] Affirmed.

Altice, J., and Tavitas, J., concur.